## HENRY W. FULLER *vs.* CONRAD RUBY.

In an action to recover rent, the plaintiff counted on a lease to the defendant, an assignment thereof from the lessor to the plaintiff, notified to the defendant, and the defendant's consequent liability to him for use and occupation; and introduced evidence, without objection, that the defendant assented to such assignment, and afterwards attorned and paid rent to him. *Held*, after verdict for the plaintiff, that the defendant could not object to the variance between the declaration and the proof.

A bill of exceptions cannot be sustained unless it states enough of the evidence to show that the judge ruled erroneously and to the prejudice of the party excepting.

Whether the eviction of a tenant by his landlord from part of the demised premises suspends the entire rent, *quære.*

Interruption by a landlord of his tenant's occupation, without evicting him, does not suspend the rent, either in whole or in part.

ACTION OF CONTRACT to recover rent. The declaration alleged that the defendant as lessee made an indenture with Louis N. Tower as lessor, and thereupon entered upon the premises, and had ever since occupied the same ; that Tower assigned the indenture to the plaintiff in writing; and that the defendant now owed the plaintiff the sum of $87.50, " pursuant to said indenture, for the use and occupation of the tenement therein for the six months severally preceding" the 1st of January 1856, " together with interest on the monthly rents so in arrears; said Ruby well knowing of such assignment." Copies of said indenture and assignment were annexed to the declaration.

At the trial in the superior court of Suffolk the following facts were proved : In November 1854 the plaintiff, being seised in fee of the premises, demised them, together with two adjoining tenements, for ten years to Tower, who entered, and in December 1854 underlet the premises by said indenture to the defendant for the monthly rent of $14.58. The defendant entered, and continued in possession till February 1856, excepting so far as disturbed or evicted as stated below. On the 1st

of June 1855 Tower assigned to the plaintiff, by instrument under seal, his lease to the defendant, and also all his interest in the lease from the plaintiff, subject to said lease to the defendant. The defendant knew of this assignment and assented to it, continued in possession, attorned to the plaintiff, and on the 1st of July 1855 paid him the amount of one month's rent, but had paid none since, although the plaintiff had demanded rent of him monthly.

The defendant contended that if there was a tortious eviction of the defendant by the plaintiff from part of the premises described in the lease declared upon, the entire rent was suspended. The statement in the bill of exceptions of the facts on this point was thus: " There was evidence tending to show that the roof of a shed on the premises had been used for years previously by the tenants for drying clothes, access to which was by stairs and a scuttle door, and that the plaintiff some time in July 1855 told the defendant that he had no right to pass up there for that purpose ; that the door was nailed up or locked up, and so continued ; and that the defendant told the plaintiff he would pay no more rent, because he cut off that privilege."

*Huntington*, J. instructed the jury that if the defendant, knowing of the assignment to the plaintiff, paid rent to him under the lease and assignment, admitted that he was the plaintiff's tenant, and continued in possession under the lease, and the plaintiff accepted rent of him as his tenant and treated him as such, it was competent evidence from which the jury might infer that the defendant waived the claim that the rent was merged, and which might rebut the presumption of law as to a merger ; and that if the right to use the roof existed previously to July 1855 under the lease, and the plaintiff interrupted that use by stopping it, the defendant continuing in the beneficial occupation of the rest of the estate, it would not, as a rule of law, suspend all claim for rent, but the jury might deduct such sum from the rent reserved by the lease as they thought reasonable. The jury returned a verdict for $67.00, and the defendant alleged exceptions.

This case was argued at November term 1857.

*E. M. Bigelow*, for the defendant.

*J. A. Loring*, for the plaintiff.

METCALF, J.   These exceptions do not show that the defendant has any legal reason to complain of the conduct or result of the trial before the jury.

1. It is not necessary to decide whether the ruling as to the alleged merger was correct; because there is a ground on which it is plain that the defendant is answerable to the plaintiff for use and occupation, if not for rent in its technical sense.   The declaration is upon an indenture and an assignment thereof to the plaintiff, averring notice to the defendant of that assignment, and alleging, as a legal inference, that the defendant owes the plaintiff a certain sum for use and occupation of the house demised in the indenture.   It is immaterial whether this declaration would have been held good or bad on demurrer. For on the trial evidence was given, without objection from the defendant, that he assented to the assignment of the indenture, attorned to the plaintiff, and afterwards paid a month's rent to him, according to the stipulation contained in the indenture.   This proved an agreement, beyond the mere legal effect of the indenture and assignment — if they had any legal effect on the defendant — on which the defendant would have been held liable to the plaintiff on a general count for use and occupation.   *Gibson* v. *Kirk*, 1 Ad. & El. N. R. 850.   Even in an action of debt for rent reserved in a sealed lease, it never was necessary to declare on the lease.   This was an exception to the rule of pleading which required a deed to be declared on, when an action was founded on it.   *Warren* v. *Consett*, 2 Ld Raym. 1503.   *Atty* v. *Parish*, 1 New Rep. 109.   *Davis* v. *Shoemaker*, 1 Rawle, 140.   If the defendant's oral agreement to pay rent to the plaintiff, after the assignment of the indenture, was inadmissible under the plaintiff's declaration, it should have been objected to at the trial.   The plaintiff might then have had leave to amend. · After a trial on the merits, in which a good cause of action for the matter of the suit is proved, and a verdict returned for the plaintiff, the defendant cannot be permitted to object, for the first time, that the action was not in

the right form, or that the declaration was not supported by the evidence. *Jones* v. *Fales,* 4 Mass. 254. *Brown* v. *Waterman,* 10 Cush. 117. Were it necessary to the saving of the plaintiff's rights, the court might now permit an amendment of his declaration. Rev. Sts. *c.* 100, § 22. *Cleaves* v. *Lord,* 3 Gray, 66. *Stone* v. *White,* 8 Gray, 589.

2. The other matter of exception is the refusal or omission of the judge to rule that an eviction of the defendant, by the plaintiff, from a part of the demised premises, suspended the entire rent. But the evidence, as stated in the bill of exceptions, showed no eviction of the defendant by the plaintiff; and we can add nothing to it, by presumption or otherwise. A bill of exceptions must set forth so much of the evidence as shows that the judge erred in his ruling as to the law applicable to that evidence ; and not only that the judge erred, but that the error was prejudicial to the party who takes the exceptions. There can be no pretence that what the plaintiff told the defendant, or what the defendant told the plaintiff, was any evidence of eviction from the roof of the house. If there had been evidence that the plaintiff nailed or locked up the scuttle, or ordered it to be done, and kept it permanently so nailed or locked up, such act of his might have been admissible evidence, to be submitted to the jury, in proof of eviction. But the exceptions do not state that the plaintiff nailed or locked up the scuttle or ordered it to be done. It " was nailed up or locked up, and so continued." By whom ? How long? If by the plaintiff, and permanently, it should have been so stated. The evidence set forth in the exceptions did not raise the question whether an eviction of the defendant by the plaintiff from a part of the demised premises suspended the entire rent or any part thereof; because it showed no such eviction. That question was therefore an abstract one, upon which a judge cannot be rightly called on to make a ruling or give instructions.

It is probable that more evidence was given, tending to prove an eviction of the defendant from the roof of the house, than the exceptions show. For the judge did not treat the question as an abstract one, but made a ruling as on a question properly

before him. And in consequence of that ruling, the jury deducted more than twenty dollars from the plaintiff's claim, when, upon the exceptions, there was no legal reason why he should not have had a verdict for the full stipulated rent. As this was·not to the prejudice of the defendant, but for his advantage, he cannot take exception to it.

We avoid the expression of an opinion, whether eviction of a tenant by the landlord from part of the demised premises, suspends the entire rent; because that question is not rightly before us. That such eviction has that effect, by the law of England, we have no doubt. Such is the decided preponderance of authority. *How* v. *Broom*, Gouldsb. 125. *Upton* v. *Townend & Greenlees*, 17 C. B. 30, 64. *Christopher* v. *Austin*, 1 Kernan, 216. In 1814, it was held by Chief Justice Dallas, at *nisi prius*, that the whole rent was not suspended, in such a case, if the tenant continued in possession of the residue of the demised premises, but that he would be liable on a *quantum meruit*. *Stokes* v. *Cooper*, 3 Campb. 514, note. And this was stated as the law in the treatises, afterwards published, on the law of landlord and tenant, by Claydon, Comyn, Archbold, Smythe and Taylor; in 2 Roscoe on Real Actions, 410; Crabb on Real Property, § 205, and in numerous other books. And the king's bench in Ireland, in the case of *Grand Canal Co.* v. *Fitzsimons*, 1 Hudson & Brooke, 449, distinctly adjudged this point in the same way, on the authority of *Stokes* v *Cooper*. But Mr. Baron Parke, in *Reeve* v. *Bird*, 1 Cr., M. & R. 36, and 4 Tyrwh 614, questioned the decision of Chief Justice· Dallas, and the recent case above cited from 17 C. B. shows that it is not the law of England. We are not apprised of any decision on this point in this commonwealth; though there is a *dictum* of Jackson, J. in *Fitchburg Cotton Manuf. Co.* v. *Melven*, 15 Mass. 271, that "it is a discharge only in proportion to the value of the land evicted;" and the question was left open in *Shumway* v. *Collins*, 6 Gray, 227.*

* In *Leishman* v. *White*,.1 Allen, 489, it was held, that a tenant evicted by his landlord from part of the demised premises was no longer liable, either for rent or for use and occupation.

If the point had been decided here conformably to the case of *Stokes* v. *Cooper*, and the question had been rightly before the judge at the trial, we could not have sustained his ruling, if the plaintiff had excepted to it, because it was so phrased as to authorize a deduction of rent if the plaintiff interrupted the defendant in the use of the roof of the house by stopping it. An interruption of a tenant, by the landlord, is not necessarily an eviction of him. And nothing less than an eviction will suspend rent, either in whole or in part. On this ruling the jury may have found their verdict on a mere trespass, or temporary disturbance of the defendant, by the plaintiff, for which the remedy was by action, and not by withholding pay for the use and occupation which was enjoyed. 1 Saund. 204, note 2. Com. Land. & Ten. 197. 5 Dane Ab. 310. *Bennet* v. *Bittle*, 4 Rawle, 339. *Ogilvie* v. *Hull*, 5 Hill, 52.

*Exceptions overruled*