No. 12,680.

Frosh *v.* Sun Drug Company.
(16 P. [2d] 428)

Decided October 17, 1932.   Rehearing denied November 28, 1932.

Mr. S. D. Crump, Mr. Philip Hornbein, Mr. Benjamin C. Hilliard, Jr., for plaintiff in error.

Messrs. Hindry, Friedman & Brewster, for defendant in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

These parties are hereinafter referred to as Frosh and the company respectively.

The company brought this action to enjoin Frosh from prosecuting suits against it for rent in justice court, to declare a lease dissolved, and for damages for ouster, injury to merchandise and fixtures, expense of moving, and loss of profits, all in the aggregate sum of $7,000. The answer admitted the commencement of an action in justice court for $205 rent, denied ouster and damages, charged voluntary abandonment of the premises and violation of the terms of the lease, and counterclaimed for $400 unpaid rent. Issue was joined by replication and answer to the counter claim. Thereafter, by stipulation and amendment of the pleadings, the action was converted into a straight suit for $3,000 damages, with a counterclaim for $2,450 rent. On the trial a jury, which had inspected the premises, returned a verdict for the company for $1,875. To review the judgment entered accordingly, Frosh prosecutes this writ.

The lease in question was for a business location in the city of Denver, was dated January 1, 1928, and ran for a term of five years. The company had bought the business from a former tenant and been in possession for about two months prior to the date of the lease. It continued to hold thereunder until April 1, 1929, when, without payment for the preceding month, it vacated. The March rent was due on the first of that month. Frosh had instituted his suit for it in the justice court on the 19th. That action would have been tried April 6, but on that date the complaint herein was filed. The premises covered by the lease was one store room in a business building owned by Frosh. Heat and water for the entire building were furnished by a plant in the basement under the leased store room of which Frosh retained possession. The company contended that this plant was so constructed, and operated by Frosh, as to deluge the leased

premises and the merchandise therein with smoke, dust, ashes and fumes, causing the damage complained of and compelling removal after repeated complaints had brought no relief.

Counsel for Frosh argues his 26 assignments under nine propositions, which, rearranged and abbreviated, may be thus stated: (1) Parol evidence was improperly admitted to vary the terms of a written contract; (2) requested instruction No. 5 should have been given; (3) the company, by its conduct, waived all defects in the premises and was estopped to claim damages; (4) there was no implied warranty as to the condition of furnace or basement; (5) the judgment is unsupported by the evidence; (6) eviction was not proved; (7) motion to strike testimony of an oral contract should have been sustained; (8) motions for nonsuit and instructed verdict should have been sustained; (9) requested instructions 6, 7 and 9 should have been given.

Since we must hold with the company on 1, 2 and 3, supra, the other points require no separate consideration. If the alleged oral agreement to put basement and furnace in condition was good, and testimony thereof properly admitted, implied warranty was immaterial. The court, moreover, instructed that there was no implied warranty. If that agreement is upheld the evidence was sufficient. If that agreement was violated there is ample evidence of eviction. If that evidence was properly admitted it should not have been stricken. If the trial court was right on 1, 2 and 3, supra, there could have been neither nonsuit nor instructed verdict for Frosh. Finally, since requested instructions Nos. 6, 7 and 9 assume the error complained of in 1, supra, they were properly refused.

■ 1. There was evidence that the smoke, dust, ashes, and fumes, complained of, had appeared prior to the execution of the written lease and that before signing it the company's representative had discussed the matter with Frosh and asked him if he would remedy that con-

dition and received the promise that he would. The lease does not mention the subject hence the assignments relating thereto.

We think we may properly pass over the numerous texts and adjudicated cases supporting the admission of the evidence, either on the principles of implied contract for quiet enjoyment, constructive eviction by the commission of a tort, or exception to the general application of the rule of caveat emptor where the offense complained of is committed on other than the leased premises, and rest our conclusion on a recent decision of our own court which we think completely answers the assignment.

"The things that ordinarily are required to be done by a lessor and a lessee after the tenancy has commenced are naturally, and usually, provided for in the written lease. But there are other matters that may be, and that not infrequently are, provided for by oral agreement rather than in a written lease; such, for example, as those that relate to placing the premises in condition fit for leasing, in preparation for leasing, and as an inducement to a prospective tenant to take a lease of the premises. Such matters need not be provided for in the written lease, even though the oral agreement has not been performed, or fully performed, at the time the lease is executed. Such an oral agreement does not contradict, add to, or vary the terms of the written lease, but is an independent agreement, capable of enforcement. Such is the present case. The court erred in excluding the offered evidence concerning the oral agreement discussed in this paragraph of the opinion." *Creek v. Lebo Investment Co.*, 85 Colo. 357, 363, 276 Pac. 329.

2. Requested instruction No. 5 begins as follows: "The defendant was under no obligation to make any repairs in the premises leased to plaintiff as a drug store." If that refers to basement and heating plant, it has no relation to the controversy, for the basement was not leased. The instruction continues "and if you find from the evidence that even though dust, etc., came up

into that part of the store used as a prescription department, and that by covering the floor at that point with linoleum or other substance, the difficulty, if any, would have been eliminated at a small cost, and plaintiff failed to do so, it cannot now complain.'' This portion of the instruction is not applicable to the evidence, which at most was that but a small part of the trouble was due to floor leaks, the overwhelming portion being that the principal cause arose from the sole ventilation of the basement through a stairway leading directly to the leased store room. Moreover, if the nuisance complained of could have been eliminated by reasonable repairs in the leased premises the subject was fully covered by the court's instruction No. 11 which reads: ''You are further instructed that there was no implied warranty or agreement on the part of the defendant that the premises, when he executed the lease, were fit for the uses to which they were to be put, or would remain so; but, on the other side, under the lease, it became and was the duty of the Sun Drug Company as lessee to make all necessary repairs and to keep the premises in fairly good condition.''

3. It should here be noted that the complaint of the company had nothing to do with defects in the leased premises, but was directed at a nuisance allegedly maintained by Frosh in a portion of the building retained by him and entirely under his control.

It is said that the company continued in possession and paid rent for more than a year and thereby waived the injury. During much of this time, however, the heating plant was not in operation and there is ample evidence that during the remainder the company was continually complaining and demanding relief and that Frosh was continually promising action. Under such circumstances there is no waiver. *Fountain Valley Land & Irr. Co. v. Wagoner,* 59 Colo. 55, 147 Pac. 333; *Lathrop v. Maddux,* 58 Colo. 258, 144 Pac. 870; *One Hundred, etc., St. Co. v. Trowbridge,* 150 N. Y. S. 538. In case of conflict the

question is one for the jury. *Greenstein v. Conradi,* 161 Minn. 234, 201 N. W. 602; *New York State Inv. Co. v. Woolf,* 145 N. Y. S. 945. In the instant case the question was submitted to the jury by the court's instruction No. 4.

Neither to the giving of said instruction No. 4, nor said instruction No. 11, nor to any other of the 17 instructions given by the court, was there objection or exception, nor is the question of the correctness of any of said instructions questioned by the bill of exceptions.

Finding no reversible error in the record the judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE ALTER concur.